# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**BUFORD CORNELIUS FLOYD**                                                   **MOVANT**

v.                                                                  No. 3:08CR98-MPM-SAA

**UNITED STATES OF AMERICA**                                             **RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on the motion of Buford Cornelius Floyd to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, Floyd has replied, and the parties have submitted supplemental briefs. The matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

### Facts and Procedural Posture

On or about August 20, 2008, Buford C. Floyd was charged in a three count Indictment. Docket No. 1. Count One charged him with knowing and intentional distribution of cocaine base in an amount in excess of five (5) grams on April 28, 2008, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B). Counts Two and Three charged him with knowing and intentional distribution of cocaine base in an amount in excess of fifty (50) grams on May 16, 2008, and July 18, 2008, respectively, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A).

### Information and Notice Declaring Intent to Seek Enhanced Sentence

In the Indictment, Floyd was charged with two counts of distribution of in excess of fifty (50) grams a mixture and substance containing a detectable amount of cocaine case in violation of 21 U.S.C. § 841(a) and (b)(1)(A) which carried a statutory term of imprisonment of not less than ten years and not more than life. However, § 841(b)(1)(A) provides:

> . . . if any person commits a violation of this subchapter…after convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . .

On January 21, 2009, the Government filed an Information and Notice Declaring Intent to Seek Enhanced Sentence in accordance with 21 U.S.C. § 851(a)(1), which was based on Floyd's two prior felony convictions. In two separate indictments, each issued July 23, 1998, Floyd was charged with willful, unlawful, and felonious sale and transfer to Chuck Smith, a quantity of Cocaine . . . within one thousand five hundred feet of a building which is all or part of . . . Martin Luther King Intermediate School, in violation of the Uniform Controlled Substance Act . . . ." Docket No. 19, Exhibits "A" and "B." According to the indictments, the offense conduct occurred on January 23, 1998, and again on January 30, 1998. *Id*. Floyd pled guilty to both charges and was sentenced for both on May 30, 2000. He received twenty years imprisonment, with fifteen years suspended, for the January 23rd offense and twenty years, with twenty years suspended upon the condition that he comply with the January 23rd sentence, for the January 30th offense. *Id*. A "felony drug offense" is defined as an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances. 21 U.S.C. § 802(44). Since Floyd was sentenced to twenty years for each offense, his offenses were "punishable by imprisonment for more than one year" and therefore qualify as felony offenses. Thus, Floyd was facing a statutory term of mandatory life imprisonment. 21 U.S.C. § 841(b)(1)(A).

### Superseding Indictment

On May 27, 2009, Floyd was charged in a six count Superseding Indictment. Counts One, Two, and Three remained the same as in the prior Indictment. Count Four charged Floyd

with distribution of cocaine base in an amount in excess of five grams on July 18, 2008, sometime after the transaction referred to in Count Three. Count Five and Count Six charged Floyd and two others with knowingly and willfully conspiring with each other to possess a controlled substance with intent to distribute, and with knowing and willfully possession of, cocaine base in an amount in excess of five grams on July 18, 2008.

## Presentence Investigation Report

For guideline calculations, Floyd was held accountable for 222.83 grams of cocaine base (4,456.6 kilograms of marijuana) and 256.05 grams of cocaine hydrochloride (51.21 kilograms of marijuana), for a total of 4,507.81 kilograms of marijuana. PSR ¶ 19. This resulted in a base offense level of 32. PSR ¶ 24. After a three level reduction for acceptance of responsibility, Floyd faced a total offense level of 29. PSR, ¶ ¶ 29-33. Floyd accumulated 07 criminal history points based on the following convictions:

| Date of Arrest | Conviction/Court | Date of Sentence | Guideline / Point | PSR ¶ Number |
|---|---|---|---|---|
| 2/16/1998 | Possession Less than 1 oz. Marijuana<br><br>Tupelo, MS Municipal Court | 8/12/98 (Guilty) | 4A1.1(c) 01 | 71 |
| Unknown | Possession Less than 1 oz. Marijuana<br><br>Tupelo, MS Municipal Court | 1/20/99 (Guilty) | 4A1.1(c) 01 | 84 |
| Unknown | Possession Less than 1 oz. Marijuana<br><br>Tupelo, MS Municipal Court | 3/10/99 (Guilty) | 4A1.1(c) 01 | 87 |
| Unknown | Possession of Controlled Substance – cocaine<br><br>Tupelo, MS Municipal Court | 4/11/00 (Guilty) | 4A1.1(c) 01 | 91 |
| Unknown | Possession Less than 1 oz. Marijuana<br><br>Tupelo, MS Municipal Court | 4/11/00 (Guilty) | 4A1.1(c) 01 | 92 |

| Date of Arrest | Conviction/Court | Date of Sentence | Guideline / Point | PSR ¶ Number |
|---|---|---|---|---|
| 3/2/98 | (1) Sale/transfer of cocaine (enhanced) (2) Sale/transfer of cocaine (enhanced) Tupelo, MS Circuit Court | 5/30/00 (1) Guilty (2) Guilty | 4A1.1(a) 03 | 97 |
| 7/14/06 | Possession of Marijuana in a Vehicle Tupelo, MS Municipal Court | 11/7/06 | 4A1.1(c) 01 | 117 |
| Unknown | Possession Less than 1 oz. Marijuana Tupelo, MS Municipal Court | 11/20/07 | 4A1.1(c) 01 | 119 |

This resulted in a subtotal criminal history score of 10. PSR ¶ 121. However, § 4A1.1(c) provides that a total of only four points may be assigned under that section. PSR ¶ 121. Therefore, Floyd's subtotal criminal history score was adjusted to 7. PSR ¶ 121. As Floyd was under a supervision term for the two January 1998 offenses at the time of the offense conduct, two points were added pursuant to U.S.S.G. § 4A1.1(d), resulting in a criminal history score of 09. Accordingly, the Guidelines provided for a Base Offense Level of 29 and a Criminal History Category of IV, which resulted in a Guideline Range of 121 to 151 months imprisonment. PSR ¶ 162.

The United States Supreme Court later decided *Dorsey v. United States*, 132 S.Ct. 2321 (2012), holding that the FSA applies to defendants, like Mr. Floyd, who were convicted prior to the FSA's effective date, but sentenced afterward. Under *Dorsey*, Mr. Floyd's statutory sentencing range became imprisonment of no less that ten years and no more than life, and his Guideline range became 100 to 125 months. The lower Guidelines sentencing ranges do not, however, alter the outcome of this case.

## Buford Floyd's Binding Plea Agreement

On November 12, 2009, Buford Floyd's Fed. R. Crim. P. 11(c)(1)(C) plea agreement ("(C) agreement") was filed with the court. The plea agreement, which is attached to the government's response as Exhibit "A," provided that Floyd would plead guilty to Count One of the Superseding Indictment and that the Government would dismiss Counts Two through Six.

The agreement provided: (1) that "the parties agree that the sentence of imprisonment to be imposed shall be 240 months" (Plea Agreement ¶ 5), and (2) that the statutory sentencing range for Floyd was not less than five years and not more than forty years imprisonment (Plea Agreement ¶ 1). On September 1, 2010, the court accepted the binding plea agreement, and Floyd was sentenced to 240 months incarceration. [96].

On October 8, 2010, Floyd filed a Notice of Appeal. [98]. The appeal was dismissed on May 9, 2011 because Floyd failed to timely comply with the court's March 30, 2011, letter, which set out Floyd's options for proceeding with the appeal. On March 4, 2013, Floyd filed the instant Motion to Vacate under 28 U.S.C. § 2255.

## The Standard for Obtaining Relief under 28 U.S.C. § 2255

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violations or want of subject matter

jurisdiction to invoke 28 U.S.C. § 2255.  In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b).  If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action.  *Id.*  The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.  *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the Government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted.  *Rules Governing Section 2255 Proceedings,* Rule 8.  Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations."  *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir.2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence.  *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir.1980).

For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir.2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir.1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the Court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Relief under 28 U.S.C. § 2255 is not available to test the legality of matters that should have been raised on appeal. *United States v. Walling*, 982 F.2d 447, 448-449 (10th Cir. 1992). A petitioner is barred from raising constitutional claims for the first time on collateral review unless he demonstrates a cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The burden of showing "cause," an "objective factor external to the defense," rests with the petitioner. *McCleskey v. Zant*, 111 S.Ct. 1454, 1470 (1991). No other types of errors may be raised on collateral review unless the petitioner demonstrates that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice. *Pierce*, 959 F.2d at 1301; *Shaid*, 937 F.2d at 232. Additionally, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979). Likewise, a motion brought under § 2255 cannot be used as a substitute for a direct appeal. *See United States v. Addonizio*, 442 U.S. 178 (1979). In general, relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of claims that could not have been raised on direct appeal. *See United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994).

## Floyd's Claims for Relief under 28 U.S.C. § 2255

In the instant § 2255 motion, Floyd makes the following claims for relief:

(1) That he was improperly designated as a career offender;

(2) That the district court erred by declining to apply the Fair Sentencing Act to determine Floyd's sentence; and

(3) That he is entitled to a reduction of his sentence under *Dorsey v. United States*, 132 S.Ct. 2321 (2012).

None of these grounds for relief has merit.

## Ground One: Career Offender

Floyd argues in Ground One of the instant petition that the court, based upon Floyd's two prior convictions in Lee County, Mississippi for sale of cocaine, sentenced him as a career offender under U.S.S.G. § 4B1.1. He is mistaken. Floyd was sentenced for a January 23, 1998, sale of cocaine and a January 30, 1998, sale of cocaine on May 30, 2000. Floyd received 3 points for those two offenses in the *Guideline criminal history calculations* in accordance with the Guideline rules for counting prior sentences. That is, the two convictions were properly counted as a single conviction because Floyd was sentenced for both offenses on the same day.

As to the *Information and Notice of Intent to Seek Enhanced Sentence*, sentences are counted separately if the offenses occurred sequentially, and counted as a single sentence if the offenses occurred simultaneously as previously discussed. According to the two indictments attached to the Government's Information and Notice, Buford Floyd first sold cocaine to Chuck Smith on January 23, 1998, and then again on January 30, 1998. Information and Notice Declaring Intent to Seek Enhanced Sentence, Exhibits "A" and "B" to the government's response. Although Floyd was sentenced for both offenses at the same time, the offenses occurred a full week apart. Thus, the offenses occurred sequentially and were properly counted

as two separate convictions for the purposes of 21 U.S.C. §§ 841 and 851.[1] *United States v. Barr*, 130 F.3d 711, 712 (5th Cir. 1997)

Buford Floyd was not sentenced as a career offender. His offense level of 29 combined with his criminal history category led to a base *Guideline range* of 121-151 months imprisonment. His original statutory range was not less than five and not more than forty years imprisonment. Floyd's two prior felony convictions, combined with the Government's Information and Notice, increased Floyd's *statutory sentence* to mandatory life imprisonment. Floyd was not, however, sentenced according to either range; instead, the court imposed the 240 month sentence set forth in his binding plea agreement – which shielded him from exposure to enhanced penalties. Therefore, this issue is without merit.

### Grounds 2 and 3: Possibility of Sentence Reduction
### Under 18 U.S.C. § 3582(c)(2)

Mr. Floyd makes two related arguments. First, he argues that the new criteria in the Fair Sentencing Act should have applied to his case when calculating his range of sentences under the United States Sentencing Guidelines, as he was sentenced after the effective date of the FSA. As discussed below, Mr. Floyd is correct about this, and the Guideline range would have been lower under the FSA criteria. *Dorsey v. United States*, 132 S.Ct. 2321 (2012). Floyd was not, however, sentenced under the Guidelines, but under the terms of his binding plea agreement, and the court, as a general rule, may not reduce a sentence so agreed upon by the parties and entered as part of the judgement. There is an exception: The court may later reduce a sentence based upon a binding plea agreement – if the sentence in the plea agreement expressly uses the Guideline

---

[1] In the interest of brevity and clarity, throughout this memorandum opinion and final judgment the court will refer to various code sections and Sentencing Guidelines without reproducing the text of them, which can be found in the Government's response to the instant motion.

range to determine the term of imprisonment. As Mr. Floyd's plea agreement neither expressly nor implicitly used a Guideline range to arrive at his sentence of 240 months incarceration, the instant case does not fall into the exception, and the court may not reduce that sentence.

## The Power of the Court to Reduce a Sentence

Federal courts are forbidden, as a general rule, from "modify[ing] a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c); but this rule of finality has a few narrow exceptions. The exception applicable to Mr. Floyd's case is found in 18 U.S.C. § 3582(c)(2), which was enacted to permit the court to reduce the term of incarceration for defendants whose Guideline sentencing range has been lowered by retroactive amendment. The statute provides:

> In the case of a defendant who has been sentenced to a term of imprisonment *based on* a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2) (emphasis added). In the present case, the court must examine application of that statute to a case when a defendant enters into a plea agreement under Fed. R. Crim. P. 11(c)(1)(C) ("(C) agreement"), which permits parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, . . . [a request which] binds the court once the court accepts the plea agreement." *Freeman v. United States*, 131 S. Ct. 2685, 2691, 180 L. Ed. 2d 519 (2011).[2] However, under the governing policy statement (United States Sentencing

---

[2] The *Freeman* decision was splintered, resulting in a plurality, rather than majority ruling. As such, the court must use the narrowest holding as the rule derived from the case. When a Supreme Court case is decided without a majority opinion, "the holding of the Court may be viewed as that position taken by those members who concurred in the judgment[] on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). As to *Freeman*, every Circuit Court considering the issue has concluded that Justice Sotomayor's opinion is the narrowest – and thus expresses the holding of the Court.

Guidelines ("USSG") § 6B1.2) the court must consult the Guidelines before accepting the (C) agreement – and evaluate the agreed-upon sentence in light of the defendant's applicable sentencing range. *Freeman*, 131 S.Ct. at 2692. A court may only accept a (C) agreement :

> ". . . if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons." Cf. *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (Guidelines commentary is authoritative). Any bargain between the parties is contingent until the court accepts the agreement. The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.

*Id*.

Once the court accepts a term of imprisonment set forth in a (C) agreement, if the Guideline range is later reduced and made retroactive, then the district court may reduce the sentence *only* "[w]hen a (C) agreement explicitly employs a particular Guidelines sentencing range to establish the term of imprisonment," because, under that circumstance, "the agreement itself demonstrates the parties' intent that the imposed term of imprisonment will be based on that range, as required for sentence reduction under the statute." *Freeman v. United States*, 131 S. Ct. at 2698 (Sotomayor, J., concurring).

**The Court May Not Reduce Buford Cornelius Floyd's
Sentence under 18 U.S.C. § 3582(c)(2)**

Mr. Floyd entered into a binding plea agreement under Rule 11(c)(1)(C), and that agreement specified the length of his sentence – 240 months. As discussed above, the Fair Sentencing Act, which has been made retroactive under *Dorsey, supra*, reduced Mr. Floyd's

---

*United States v. Thompson*, 682 F.3d 285 (3rd Cir. 2012) (citing *United States v. Austin*, 676 F.3d 924, 926 (9th Cir. 2012); *United States v. Rivera-Martinez*, 665 F.3d 344, 345 (1st Cir. 2011); *United States v. Brown*, 653 F.3d 337, 340 n. 1 (4th Cir. 2011); *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011); *United States v. White*, 429 Fed. App'x 43, 47 (2nd Cir. 2011) (unpublished)).

Guideline range – thus meeting the first criteria to determine whether the court can reduce his sentence under § 3852(c)(2). The remaining issue is whether Floyd's sentence met the second criteria: Was it "based on" a Guideline sentencing range – and thus eligible for reduction under § 3582(c)(2)? Therefore, resolution of this issue turns on the definition of "based on," as applied through § 3582(c)(2) to Mr. Floyd's case.

The fact that the parties used a Guideline range as a starting point for negotiations is insufficient to show that the agreed-upon sentence was "based on" a specific range. The Supreme Court made clear in *Freeman*:

> . . . the mere fact that the parties to a (C) agreement may have considered the Guidelines in the course of their negotiations does not empower the court under § 3582(c)(2) to reduce the term of imprisonment they ultimately agreed upon . . . .
>
> . . .
>
> . . . [I]n most cases the Government and the defendant will negotiate the term of imprisonment in a (C) agreement by reference to the applicable Guidelines provisions . . . [because] . . . the Guidelines are . . . the starting point and initial benchmark for plea negotiations[.] [Indeed, there is] . . . the concededly strong likelihood that the parties will . . . calculat[e] and conside[r] potential Guidelines ranges in the course of negotiating a plea agreement and selecting a specific sentence. This only makes sense; plea bargaining necessarily occurs in the shadow of the sentencing scheme to which the defendant would otherwise be subject. [P]lea bargaining takes place in the shadow of . . . a potential trial.
>
> . . .
>
> The term of imprisonment imposed by the district court, however, is not "based on" those background negotiations; instead, as explained above, it is based on the binding agreement produced by those negotiations.

*Freeman v. United States*, 131 S. Ct. 2685, 2697, 180 L. Ed. 2d 519 (2011) (internal quotations and citations omitted). Instead, the district court may only reduce a term of imprisonment arising out of a sentence imposed under a (C) agreement "when a (C) agreement *expressly* uses a Guidelines sentencing range to establish the term of imprisonment, and that range is subsequently lowered by the [Sentencing] Commission." *Freeman*, 131 S. Ct. at 2698.

Mr. Floyd argues throughout his § 2255 motion and related pleadings that the higher pre-FSA statutory and Guideline ranges induced him to agree to the 240-month term of incarceration, and that, under the lower statutory and Guideline ranges associated with the FSA, he would have negotiated for a lesser sentence. Prior to the passage of the FSA, Floyd faced a statutory mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) due to the marijuana equivalency and his two prior felony convictions; his guideline range was therefore 121-151 months incarceration. As Floyd was sentenced *after* the effective date of the FSA, his base offense level must be reduced to 27, though his criminal history category of IV remains the same. This combination yields a lower Guidelines range of 100-125 months incarceration. The marijuana equivalency reduction also means that Floyd would have been charged under 21 U.S.C. § 841(b)(1)(B), which, with a prior felony conviction, carries an enhanced sentence of imprisonment for not less than 10 years, nor more than life. Thus, he faced a mandatory life sentence before the effective date of the FSA, but his exposure after the FSA's effective date was lower (though still onerous) – imprisonment from 10 years to life. Under the Supreme Court's ruling in *Freeman*, Floyd's argument is irrelevant, as the lynchpin of § 3582(c)(2) is whether the (C) agreement was "based on" a particular guideline range, and his was not.

As discussed above, though Mr. Floyd and his attorney may have used the Guidelines as a "launchpad" for negotiations, the final plea agreement under Fed. R. Crim. P. 11(c)(1)(C) does not expressly (or even implicitly) mention a specific Guideline range to show that the 240 month sentence was "based on" such a range. The Sentencing Guidelines appear in only four places in the (C) agreement: (1) ¶ 4, pertaining to a sentence reduction under § 5K1.1 for substantial assistance; (2) ¶ 5, informing Mr. Floyd that the court has sole discretion as to the sentence, subject to the Guidelines; (3) ¶ 6, stating that Mr. Floyd will receive a 3-level reduction of his Guideline range for accepting

responsibility for his crimes; and (4) ¶ 9, stating that he has been advised that the Sentencing Guidelines apply. None of these references to the Sentencing Guidelines shows that the 240 month sentence was "based on" a specific Guideline range; as such, the court may not reduce Mr. Floyd's sentence under 18 U.S.C. § 3582(c)(2). This claim for relief will therefore be denied.

## Conclusion

In sum, for the reasons set forth above, none of the movant's claims has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of March, 2016.

> **/s/ MICHAEL P. MILLS**
> **UNITED STATES DISTRICT JUDGE**
> **NORTHERN DISTRICT OF MISSISSIPPI**